DAWYN R. HARRISON (Bar No. 173855),
County Counsel
ELENA B. EGGERS (Bar No. 295137),
Deputy County Counsel
One Gateway Plaza
Los Angeles, California 90012
Tel: (213) 922-2525
eggerse@metro.net

BRIAN J. BERGMAN (State Bar No. 240584)
LISA DELORME (State Bar No. 198940)
BDG LAW GROUP, APLC
10880 Wilshire Boulevard, Suite 1015
Los Angeles, California 90024-4101
Telephone: 310.470.6110 / Facsimile: 310.474.0931
bbergman@bdgfirm.com / ldelorme@bdgfirm.com

Attorneys for Plaintiff
LOS ANGELES COUNTY METROPOLITAN
TRANSPORTATION AUTHORITY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY, a California public entity,<br><br>Plaintiff,<br><br>v.<br><br>California Drop Forge, Inc., a Delaware corporation ("California Drop Forge"), Fansteel, Inc., a Delaware corporation; Santa Fe Pacific Realty Corporation, a Delaware corporation; Catellus Development Corporation, a Delaware Corporation; Catellus Operating Limited Partnership, a Delaware limited partnership; and Prologis Logistics Service, a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>1. Recovery of Response Costs under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601, *et seq.*;<br>2. Recovery of Response Costs Under the Hazardous Substance Account Act, California H&S Code §§ 25300, *et seq.*;<br>3. Nuisance, Cal. Civil Code §§ 3479–80;<br>4. Trespass;<br>5. Negligence;<br>6. Breach of Written Contract;<br>7. Declaratory Relief as to Response Costs;<br>8. Declaratory Relief as to Contractual Indemnification.<br><br>**DEMAND FOR JURY TRIAL** |

BDG LAW GROUP
10880 Wilshire Blvd. Suite 1015
Los Angeles, California 90024
Telephone: (310) 470-6110, Facsimile: (310) 474-0931

Plaintiff Los Angeles County Metropolitan Transportation Authority ("Metro") brings this action against Defendants California Drop Forge, Inc., a Delaware corporation ("California Drop Forge"), Fansteel, Inc., a Delaware corporation; Santa Fe Pacific Realty Corporation, a Delaware corporation; Catellus Development Corporation, a Delaware corporation; Catellus Operating Limited Partnership, a Delaware limited partnership; and  Prologis Logistics Service, a Delaware corporation; and DOES 1 through 50, inclusive, (collectively "Defendants") and alleges upon knowledge of its own acts, and upon information and belief as to the acts of all others, as follows:

## NATURE OF THE ACTION

1.   Metro files this action seeking recovery of response costs to respond to and remediate environmental contamination caused by, or contributed to by, Defendants, and each of them.

2.      The area of contamination for which Metro seeks relief is in and around the property known as 203 E. College St., Los Angeles, CA 90012 and identified by APN 5409-014-906 (the "Property")

3.      At all times during Defendants' activities, the Property was a "facility" within the meaning of the Comprehensive Environmental Response, Compensation, and Liability Act "CERCLA" § 101(9), 42 U.S.C. § 9601(9), and the California Hazardous Substance Account Act ("HSAA"), California Health and Safety Code § 25310.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction over Plaintiff's CERCLA and declaratory relief claims pursuant to CERCLA Section 9107(a), 42 U.S.C. § 9107(a), et seq.; Section 2201 of the Declaratory Judgments Act, 28 U.S.C. 2201-2202; and the federal question jurisdiction statute, 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over all other claims raised in this Complaint pursuant to 28 U.S.C. § 1367. All of the claims alleged in this Complaint that arise under state law are related

**BDG LAW GROUP**
10880 Wilshire Blvd. Suite 1015
Los Angeles, California 90024
Telephone: (310) 470-6110, Facsimile: (310) 474-0931

to claims over which this Court has original jurisdiction such that they form part of the same case or controversy under Article III of the United States Constitution.

5.     Venue is proper in the Central District of California (the "District") pursuant to CERCLA Section 9107, et seq., 42 U.S.C. § 9107, et seq., and 28 U.S.C. §1391 (b) and (c), because the acts, omissions, "Releases," as that term is defined by 42 U.S.C.  § 9101(22), and damages that give rise to these claims occurred in this District; and alternatively, because all Defendants either conduct or conducted business and/or other activities that give rise to these claims within this District.

### THE PARTIES TO THE ACTION

6.     Plaintiff Metro is a public entity within the meaning of California Government Code §811.2.  Since 2011, Metro has been, and still is, the owner of the real property located at 203 E. College St., Los Angeles, CA 90012 and identified as APN 5409-014-906 (the "Property").  Metro is a "person" as that term is defined in 42 U.S.C. § 9601(21) and California Health and Safety Code § 25319.

7.     Defendant California Drop Forge Inc. ("Drop Forge") is, and at all relevant times mentioned in this Complaint, has been, a Delaware corporation, doing business in the State of California, within this District.  Metro is informed and believes and thereon alleges that from November 2003 until January 2021 Drop Forge was a lessee of the Property who operated a metal fabrication facility on the Property. Drop Forge is a "person" as that term is defined in 42 U.S.C. § 9601(21) and Cal. Health and Safety Code § 25319.

8.     At all relevant times mentioned in this Complaint, Defendant Fansteel, Inc. ("Fansteel"), has been a Delaware corporation, who has done business in the State of California, within this District.  Metro is informed and believes, and on that basis alleges, that Fansteel was a predecessor lessee of the Property from 1970 to 2003. Metro is informed and believes, and on that basis alleges, that Fansteel also operated a metal fabrication facility on the Property, as the tenant of Metro's predecessors in title.  Fansteel is a "person" as that term is defined in 42 U.S.C. § 9601(21) and Cal.

**BDG LAW GROUP**
10880 Wilshire Blvd. Suite 1015
Los Angeles, California 90024
Telephone: (310) 470-6110, Facsimile: (310) 474-0931

BDG LAW GROUP
10880 Wilshire Blvd. Suite 1015
Los Angeles, California 90024
Telephone: (310) 470-6110, Facsimile: (310) 474-0931

Health and Safety Code § 25319.  In 2016, Fansteel filed for Chapter 11 bankruptcy protection in the Southern District of Iowa, Case No. 2016-01823-1ls-11.  Metro is informed and believes, and thereon alleges, that the Bankruptcy Court confirmed a plan of reorganization on August 6, 2020 over which the Court retains jurisdiction.

9.     The Santa Fe Pacific Realty Corporation, was, at all times relevant to this Complaint, a Delaware corporation who has done business in the State of California, within this District.  Metro is informed and believes, and on that basis alleges, that Santa Fe Pacific Realty Corporation was a predecessor owner of the Property on or about 1990.  Santa Fe Pacific Realty Corporation is a "person" as that term is defined in 42 U.S.C. § 9601(21) and Cal. Health and Safety Code § 25319.

10.     Catellus Development Corporation, was, at all times relevant to this Complaint, and is a Delaware corporation who has, and does, business in the State of California, within this District.  Metro is informed and believes, and on that basis alleges, that Catellus Development Corporation was a predecessor owner of the Property from 1990 to 2003.  Catellus Development Corporation is a "person" as that term is defined in 42 U.S.C. § 9601(21) and Cal. Health and Safety Code § 25319.

11.     Catellus Operating Limited Partnership, was, and is, a Delaware limited partnership who has done business in the State of California, within this District. Metro is informed and believes, and on that basis alleges, that Catellus Operating Limited Partnership was a predecessor owner of the Property from 2003 to 2010.  Catellus Operating Limited Partnership is a "person" as that term is defined in 42 U.S.C. § 9601(21) and Cal. Health and Safety Code § 25319.

12.     Prologis Logistics Service, was, at all times relevant to this Complaint, and is a Delaware corporation who has, and does, business in the State of California, within this District. Metro is informed and believes, and on that basis, alleges that Prologis Logistics Service was a predecessor owner of the Property from 2010 to 2011.  Prologis Logistics Service is a "person" as that term is defined in 42 U.S.C. § 9601(21) and Cal. Health and Safety Code § 25319.

13.     Plaintiff is presently ignorant as to the true names and capacities of Defendants DOES 1 through 50, inclusive, and therefore sues such Defendants by such fictitious names, and will seek leave of court to amend this Complaint to set forth the true names and capacities of each such Defendant when same are ascertained. Plaintiff is informed and believes, and thereon alleges, that each such fictitiously named Defendant was an operator and/or owner of the Property and/or properties and Facilities near the Property, where such DOE Defendants Released and disposed of "Hazardous Substances" within the meaning of CERCLA and HSAA.  Plaintiff is informed and believes that Hazardous Substances Released at properties and locations at or near the Property and under the ownership or control of Does 1 through 50 have commingled with Hazardous Substances Released from the Property, creating an indivisible harm for which Defendants, including DOES 1 through 50, are liable. DOES 1 to 50 are persons as that term is defined in 42 U.S.C. § 9601(21) and California Health and Safety Code § 25319.

## POTENTIALLY RELATED CASES

14.     Plaintiff is unaware of any other actions which are related, or should be related, to this action.

## GENERAL ALLEGATIONS

15.     Metro is informed and believes and thereon alleges that lessees have continuously operated metal fabrication facilities on the Property located at 203 E. College St., Los Angeles, CA 90012 during the period from 1970 to 2021.

16.     The Property constitutes a "Facility" within the meaning of CERCLA §101(9), 42 U.S.C. §9601(9) and a "Site" within the meaning of Cal. Health & Safety Code §25323.9.

17.     In or about 1970, Fansteel, Inc. ("Fansteel") leased the Property from one of Metro's predecessors in title, and then built and operated a specialty metal fabricating facility (the "Metal Fabrication Plant").  Metro will refer to the 1970 lease

BDG LAW GROUP
10880 Wilshire Blvd. Suite 1015
Los Angeles, California 90024
Telephone: (310) 470-6110. Facsimile: (310) 474-0931

to the Property as "the Fansteel Lease." From 1970 to 2003, Fansteel occupied the Property and operated the Metal Fabrication Plant to produce specialty metal parts and equipment. The Property constituted a "Facility" within the meaning of CERCLA §101(9), 42 U.S.C. §9601(9).

18.    In January 2002, Fansteel filed for Chapter 11 bankruptcy protection in Delaware. In the course of those bankruptcy proceedings the Fansteel Lease was assigned to California Drop Forge, Inc. ("Drop Forge") and Drop Forge assumed the lease obligations of Fansteel, on or about November 2003. Metro is informed and believes, and on that basis alleges, that Defendant Drop Forge was a subsidiary of Defendant Fansteel. Drop Forge, Inc. occupied the Site during the period 2003 to 2021. Drop Forge was engaged in the business of forging and machining specialty metal parts and components for the aerospace and medical industries The Property constituted a "Facility" within the meaning of CERCLA §101(9), 42 U.S.C. §9601(9).

19.    Santa Fe Pacific Realty Corporation is a predecessor owner of the Property who Metro is informed and believes and thereon alleges owned the Property on or about 1990.

20.    On or about 1990, Metro is informed and believes and thereon alleges that Catellus Development Corporation became the owner of the Property by way of a corporate merger with Santa Fe Pacific Realty Corporation.

21.    On or about 2003, Metro is informed and believes and thereon alleges that Catellus Operating Limited Partnership became the owner of the Property by way of a corporate merger with Catellus Development Corporation.

22.    On or about 2010, Metro is informed and believes and thereon alleges that Prologis Logistics Service became the owner of the Property by way of a grant deed from Catellus Operating Limited Partnership.

23.    Metro acquired ownership of the Property by a grant deed from Prologis Logistics Service in 2011 as part of a multi-parcel transaction. As part of the purchase, Metro acquired the Fansteel Lease and became the landlord under the

BDG LAW GROUP
10880 Wilshire Blvd. Suite 1015
Los Angeles, California 90024
Telephone: (310) 470-6110, Facsimile: (310) 474-0931

Fansteel Lease, with Drop Forge remaining the tenant as the successor to Fansteel.

24.     In 2017, Metro and California Drop Forge entered a new lease for the Property, effective as of May 1, 2016 (the "2017 Lease") which replaced and superseded the Fansteel lease.

25.     From 2003 to 2021, operating first under the Fansteel Lease and then under the 2017 Lease, defendant Drop Forge operated the Metal Fabrication Plant in its specialty metal fabrication business on the Property, where Drop Forge forged and machined specialty metal parts and components for the aerospace and medical industries.

26.     On or about January 31, 2021, the 2017 Lease was terminated and California Drop Forge vacated the Property.

27.     In the course of its business operating the Metal Fabrication Plant, Metro is informed and believes and thereon alleges that California Drop Forge employed, among other processes, a fabrication process that involves transferring a heated metal billet into a progressive series of impression dies (molds) that are brought together with force, employing mechanical and thermal pressure, and causing the metal to flow to achieve the final shape of the forged part.  In this process, a small amount of material, known as flash, flows outside of the dies' joint lines, and is then removed. Additional secondary steps would then be performed as needed, such as heat treating, grinding and/or machining, to produce a finished part.

28.     Metro is informed and believes and thereon alleges that Fansteel, Inc. employed a similar metal manufacturing process during its operation on the Site.

29.     During the time defendants occupied the Property and operated the Metal Fabrication Plant, Defendants' operations at the Property resulted in the contamination of the Property through the Release of Hazardous Substances into the soil and/or the groundwater on and beneath the Property.

30.     In the course of operating their business and operating the Metal Fabrication Plant, Defendants Fansteel, Drop Forge and DOES 1-50 used and

BDG LAW GROUP
10880 Wilshire Blvd. Suite 1015
Los Angeles, California 90024
Telephone: (310) 470-6110, Facsimile: (310) 474-0931

generated substances that are "Hazardous Substances" within the meaning of CERCLA and HSAA. These substances include, without limitation, total petroleum hydrocarbons ("TPH"), Volatile Organic Compounds ("VOC"), metals, polycyclic aromatic hydrocarbons ("PAHs") and polychlorinated biphenyls ("PCBs") each of which is identified as a hazardous substance subject to the provisions of CERCLA and HSAA.

31.     Metro is informed and believes, and on that basis alleges, that while owning and/or operating on the Property, and/or in close proximity to the Property, Defendants negligently, suddenly or accidently Released or otherwise discarded Hazardous Substances into the ground at the Property, and/or controlled the property from which Hazardous Substances were Released into the ground at the Property, and that Defendants failed to prevent or abate the ground contamination that their activities caused.

32.     Metro is informed and believes, and based thereon alleges, that Hazardous Substances, as that term, is defined by CERCLA § 101(14), 42 U.S.C. § 9601(14) and California Health and Safety Code § 25316, were Released at and/or in close proximity to the Property during the ownership and/or operation of properties and facilities by Defendants DOES 1-50, due to the, negligent, sudden, or accidental, events by these Defendants and others, and that any and all Hazardous Substances have migrated and continue to migrate to and/or from the site and into the environment.

33.     Metro is informed and believes and thereon alleges that pollution on the Property was caused by third parties whom Metro has no direct or indirect affiliation or agency, nor any financial, corporate or contractual relationship with, other than being a party to the real estate contracts under which it acquired or let the Property.

34.     Metro is informed and believes, and thereon alleges, that the Property was acquired by Metro after the disposal or placement of the hazardous substance on, in, or at the Facility.

BDG LAW GROUP
10880 Wilshire Blvd. Suite 1015
Los Angeles, California 90024
Telephone: (310) 470-6110, Facsimile: (310) 474-0931

/ / /

35.     Metro has not transported, used, or Released any Hazardous Substances on the property and has not caused, contributed to, or exacerbated the Release of Hazardous Substances onto the Property.

36.     Metro has not interfered with, or failed to cooperate with, the efforts of anyone else to remedy or repair any contamination or other damage which the actions of Defendants caused by the Release of Hazardous Substances upon the Property.

37.     Metro has provided all legally required notices with respect to the discovery or Release of any Hazardous Substances at the facility.

38.     Metro has exercised due care with regard to the contamination caused by Defendants and their predecessors in interest and/or the foreseeable consequences of that contamination; and has taken precautions against foreseeable acts or omissions of third parties which could contaminate the property.

39.     Metro has, and will provide full cooperation, assistance, and facility access to all persons authorized to conduct response actions at the facility and has and will comply with any land use restrictions established or relied on in connection with any response action at the facility and has and will not impede the effectiveness of any institutional control employed at the facility in connection with a response action.

40.     Metro has, and will, comply with any request for information or administrative subpoena issued, if any.

41.     Plaintiff has incurred response costs necessary and consistent with the National Contingency Plan with respect to Hazardous Substances Releases at and in the vicinity of the Property including but not limited to investigatory costs, including the costs of employing environmental consultants and engineers, and attorneys. Metro anticipates it will continue to incur response costs, and other damages, including but not limited to legal fees and costs, environmental and engineering consulting fees and costs, potential regulatory agency oversight fees, and any costs necessary to discharge Metro's obligations created by potential government orders.

BDG LAW GROUP
10880 Wilshire Blvd. Suite 1015
Los Angeles, California 90024
Telephone: (310) 470-6110, Facsimile: (310) 474-0931

42.     Specifically, Metro has already expended amounts exceeding $40,000 and growing, to conduct investigations as to the nature and cause of the environmental contamination at the Property.

43.     Metro contends it will be subject to the future expense of considerable sums, in an amount to be proven at trial, and which amount will exceed its already expended expenses, to further investigate and respond to the environmental contamination at the site.  Metro currently estimates that the future expenses to further investigate, respond to and remediate the environmental contamination at the site will exceed $10 million dollars.   However, the full amount of the exact costs Metro ultimately will be forced to incur is presently unknown to Metro and unknowable. Metro therefore will seek leave of this Court to amend this Complaint when the full extent of its necessary response costs becomes known.

44.     Metro is a government entity vested by law with the authority to exercise the power of eminent domain pursuant to California Public Utilities Code Sections 30000-33027, inclusive, and particularly Section 30503 and 30600, Sections 130000-132650, inclusive, and particularly Sections 130051.13 and 130220.5, California Code of Civil Procedure Sections 1230.010-1273.050, inclusive, and particularly Sections 1240.510 and 1240.610, and Article I, Section 19 of the California Constitution.

### FIRST CLAIM FOR RELIEF

(Recovery of Response Costs Pursuant to CERCLA)
(As Against All Defendants)

45.     Plaintiff refers to and realleges paragraphs 1 through 44 of this Complaint and incorporates them herein by this reference as though set forth in full herein.

46.     Plaintiff and all Defendants are "persons" as defined by CERCLA § 9601(21), 42 U.S.C. § 9601(21).

47.     At all relevant times identified in this Complaint, Defendants "owned" or "operated" the Property and/or the Metal Fabrication Plant on the Property, as those terms are defined in CERCLA § 9107(a)(2), 42 U.S.C. § 9601(a)(1).

BDG LAW GROUP
10880 Wilshire Blvd. Suite 1015
Los Angeles, California 90024
Telephone: (310) 470-6110, Facsimile: (310) 474-0931

48.     At all relevant times mentioned in the Complaint, the Metal Fabrication Plant was a "facility" as defined by CERCLA § 9601(9), 42 U.S.C. §9601(9).

49.     The elements, compounds, mixtures, solutions and substances discovered at the Property and identified above in Paragraph 29 are all "Hazardous Substances" within the meaning of CERCLA § 101(14), 42 U.S.C. § 9601(14).

50.     Defendants' operation of the Plant at the Property resulted in the contamination of the Property by the "Release" of "Hazardous Substances" within the meaning of CERCLA §101(22), 42 U.S.C. § 9601(22).

51.  The Release of those Hazardous Substances has required and will continue to require Metro to spend money on "Response Costs" related to the "Removal" and "Remedial Actions" of Hazardous Substances, as those terms are defined at CERCLA §9101 (23) and (24), 42 U.S.C. § 9601(23), (24) (25).

52.     The costs Metro has incurred include without limitation, costs to investigate, monitor, assess and evaluate the Release and/or threatened Release of Hazardous Substances on the Property and investigation costs necessary to identify the Released substances and the parties who may be responsible for the Release or threatened Release of such substances.

53.     Metro is informed and believes and thereon alleges that: Metro qualifies as a Bona Fide Prospective Purchaser within the meaning of 42 USC §9607(r), 42 U.S.C. §9601(40). Metro is the owner of property onto which Hazardous Substances have been Released.  Metro did not cause, contribute to, or consent to the Release of the Hazardous Substances which have contaminated the Property. Metro is informed and believes and thereon alleges that contamination of the Property occurred before Metro acquired the Property. Metro is not affiliated with any other person that is potentially liable for response costs at this facility through any direct or indirect familial, contractual, corporate or financial relationship, other than contracts for the sale or lease of the property, nor does it have affiliation through the reorganization of any potentially liable business entity.  Upon acquiring the Property, Metro took

**BDG LAW GROUP**
10880 Wilshire Blvd. Suite 1015
Los Angeles, California 90024
Telephone: (310) 470-6110, Facsimile: (310) 474-0931

reasonable steps to stop any continuing Release of Hazardous Substances,  prevent any threatened future Release, and to prevent or limit any human, environmental, or natural resource exposure to any previously Released hazardous substance. Metro has provided all legally required notices with respect to the discovery or Release of any Hazardous Substances at the facility. Metro is informed and believes, and thereon alleges, that prior to, and within 180 days of its purchase of the facility, Metro made "all appropriate inquiries, as defined by 42 USC §9607(r) and 42 U.S.C. §9601(40), into the previous ownership and uses of the facility in accordance with generally accepted good commercial practices and customary standards and practice.   Metro has, and will provide full cooperation, assistance, and facility access to all persons authorized to conduct response actions at the facility and has and will comply with any land use restrictions established or relied on in connection with any response action at the facility, has and will not impede the effectiveness  of any institutional control employed at the facility in connection with a response action and has and will comply with any request for information or administrative subpoena issued, if any.

54.     Metro is a government entity vested by law with the authority to exercise the power of eminent domain pursuant to California Public Utilities Code Sections 30000-33027, inclusive, and particularly Section 30503 and 30600, Sections 130000-132650, inclusive, and particularly Sections 130051.13 and 130220.5, California Code of Civil Procedure Sections 1230.010-1273.050, inclusive, and particularly Sections 1240.510 and 1240.610, and Article I, Section 19 of the California Constitution.

55.     Metro is informed and believes and thereon alleges that Metro purchased the property for public use , in lieu of the exercise of its eminent domain powers.

56.     Drop Forge also operated a metal fabrication plant at 1033 Alhambra Ave, Los Angeles, California, which is a location which is contiguous to the Property. Metro is informed and believes and thereon alleges that it is a "contiguous property owner" within the meaning of 42 U.S.C. § 9607(q).  Metro is the owner of property onto which Hazardous Substances have been Released.  Metro did not cause,

BDG LAW GROUP
10880 Wilshire Blvd. Suite 1015
Los Angeles, California 90024
Telephone: (310) 470-6110, Facsimile: (310) 474-0931

contribute to, or consent to the Release of the Hazardous Substances which have contaminated the Property. Metro is informed and believes and therein alleges that the original source of all or a part of the contamination was the contiguous property at 1033 Alhambra Ave, Los Angeles, California which is property other than Metro's Property. Plaintiff Metro has no affiliation with the owners of the contiguous property which was the original source of all or a part of the contamination through any direct or indirect familial, contractual, corporate or financial relationship, other than contracts for the sale or lease of the property, nor does it have affiliation through the reorganization of any potentially liable business entity.   Plaintiff Metro performed "all appropriate inquiries" prior to acquiring the Property and did not know or have reason to know that the source of the Hazardous Substances Release was from contiguous property that is not owned by Metro.  Metro is meeting continuing obligations regarding the Property and has taken "reasonable steps" to stop any continuing Release and/or to prevent any threatened future Release.  Metro has, and will provide full cooperation, assistance, and facility access to all persons authorized to conduct response actions at the facility and has and will comply with any land use restrictions established or relied on in connection with any response action at the facility, has and will not impede the effectiveness  of any institutional control employed at the facility in connection with a response action and has and will comply with any request for information or administrative subpoena issued, if any.

71.    As a direct and proximate result of the actions and conduct of

57.    To date, Plaintiff has incurred response costs exceeding $40,000, in a total amount to be proved at trial, in the investigation and identification of the Released Hazardous Substances and the investigation and identification of the parties potentially responsible for such Releases.

58.    Plaintiff will incur significant future response costs and significant future costs in developing and implementing appropriate response plans and actions.

59.    All such Response Costs incurred and that will be incurred have been and

**BDG LAW GROUP**
10880 Wilshire Blvd. Suite 1015
Los Angeles, California 90024
Telephone: (310) 470-6110, Facsimile: (310) 474-0931

will continue to be necessary and consistent with the National Contingency Plan ("NCP") as set forth in 40 C.F.R Part 300.

60.     Metro has not incurred those costs pursuant to any regulatory, administrative or judicial order.

61.     Pursuant to 42 U.S.C. §9607(a), the Defendants are liable to Plaintiff for all necessary response costs incurred by Plaintiff in responding to the Release or threatened Release of Hazardous Substances.  Plaintiff is in no way responsible or liable for the Release or threatened Release of Hazardous Substances on or at the Property and, as compared to the Defendants who actively and negligently generated, and Released Hazardous Substances at the Property, is blameless.

## SECOND CLAIM FOR RELIEF

(Recovery of Response Costs Under
California Hazardous Substance Account Act ("HSAA"))
(Against All Defendants)

62.     Plaintiff refers to and realleges paragraphs 1 through 61 of this Complaint and incorporates them herein by this reference as though set forth in full herein.

63.     At all relevant times mentioned in this Complaint, Defendants "owned" or "operated" the Metal Fabrication Plant at the Property, as that term is defined in 42 U.S.C. §9607(a)(1).  Therefore, Defendants are "Responsible Parties" and "Liable Persons" as those terms are defined in Cal. Health & Safety Code § 25323.5.

64.     The Property is a Site within the meaning of Cal. H&S Code § 25323.9.

65.     Defendants' operations of the Metal Fabricating Plant resulted in the contamination of the Property by the "Release" of "Hazardous Substances" as those terms are defined in Cal. Health and Safety Code §§ 25316 and 25320.  The Release of those materials into the environment poses a threat to the public health and the environment.

66.     As a direct, proximate and legal result of the Release of Hazardous Substances on the Property by Defendants and the predecessors in interest and

BDG LAW GROUP
10880 Wilshire Blvd. Suite 1015
Los Angeles, California 90024
Telephone: (310) 470-6110, Facsimile: (310) 474-0931

Defendants' failure to fully remove and remediate the contamination caused by that Release.  Metro has been required to respond to the contamination and has incurred response costs. Metro has been damaged in the manner and in the amounts described above herein.

67.  Metro is not a person liable under HSAA § 25323.3 for costs incurred and, therefore, is entitled to indemnity or contribution and other relief from Defendants, and each of them, for all costs that Metro has incurred, or will incur, in response to the presence of Hazardous Substances at the Property.  Defendants, and each of them, are solely responsible for the amount of these costs, plus interest on that amount as provided by law.

68.  Plaintiff will give the California Department of Toxic Substances Control written notice of the filing of this action, to the extent required by Cal. Health & Safety Code § 25363(d).

69.  Metro is informed and believes and thereon alleges that: Metro qualifies as a Bona Fide Prospective Purchaser within the meaning of Cal. Health & Safety Code 25395.69.  Metro has not caused, contributed to or consented to the Release of any Hazardous Substances on the Property.  Metro is informed and believes and thereon alleges that contamination of the Property occurred before Metro acquired the Property. Metro is not affiliated with any other person that is potentially liable for response costs at this facility through any direct or indirect familial, contractual, corporate or financial relationship, other than contracts for the sale or lease of the property, nor does it have affiliation through the reorganization of any potentially liable business entity.  Upon acquiring the Property, Metro took reasonable steps to stop any continuing Release of Hazardous Substances, prevent any threatened future Release, and to prevent or limit any human, environmental, or natural resource exposure to any previously Released hazardous substance. Metro has provided all legally required notices with respect to the discovery or Release of any Hazardous Substances at the facility. Metro is informed and believes, and thereon alleges, that

BDG LAW GROUP
10880 Wilshire Blvd. Suite 1015
Los Angeles, California 90024
Telephone: (310) 470-6110, Facsimile: (310) 474-0931

prior to, and within 180 days of its purchase of the facility, Metro made "all appropriate inquiries into the previous ownership and uses of the facility in accordance with generally accepted good commercial practices and customary standards and practice.   Metro has, and will provide full cooperation, assistance, and facility access to all persons authorized to conduct response actions at the facility and has and will comply with any land use restrictions established or relied on in connection with any response action at the facility, has and will not impede the effectiveness  of any institutional control employed at the facility in connection with a response action and has and will comply with any request for information or administrative subpoena issued, if any.

70.     Drop Forge also operated a metal fabrication plant at 1033 Alhambra Ave, Los Angeles, California, which is a location which is contiguous to the Property. Metro is informed and believes and thereon alleges that it is a "contiguous property owner" within the meaning of California Health & Safety Code § 25395.70.  Metro is the owner of property onto which Hazardous Substances have been Released.  Metro did not cause, contribute to, or consent to the Release of the Hazardous Substances which have contaminated the Property. Metro is informed and believes and therein alleges that the original source of all or a part of the contamination was the contiguous property at 1033 Alhambra Ave, Los Angeles, California which is property other than Metro's Property. Plaintiff Metro has no affiliation with the owners of the contiguous property which was the original source of all or a part of the contamination through any direct or indirect familial, contractual, corporate or financial relationship, other than contracts for the sale or lease of the property, nor does it have affiliation through the reorganization of any potentially liable business entity.   Plaintiff Metro performed "all appropriate inquiries" prior to acquiring the Property and did not know or have reason to know that the source of the Hazardous Substances Release was from contiguous property that is not owned by Metro.  Metro is meeting continuing obligations regarding the Property and has taken "reasonable steps" to stop any

BDG LAW GROUP
10880 Wilshire Blvd. Suite 1015
Los Angeles, California 90024
Telephone: (310) 470-6110, Facsimile: (310) 474-0931

continuing Release and/or to prevent any threatened future Release.  Metro has, and will provide full cooperation, assistance, and facility access to all persons authorized to conduct response actions at the facility and has and will comply with any land use restrictions established or relied on in connection with any response action at the facility, has and will not impede the effectiveness  of any institutional control employed at the facility in connection with a response action and has and will comply with any request for information or administrative subpoena issued, if any.

71.    As a direct and proximate result of the actions and conduct of Defendants, as alleged herein, and due to the strict liability imposed by the HSAA, Plaintiff is entitled to contribution from Defendants under section 25363 of the California Health & Safety Code for all response costs incurred that are attributable to Defendants.

72.     Metro is informed and believes, and on that basis alleges, that prior to its purchase of the facility, Metro made "all appropriate inquiries into the previous ownership and uses of the facility in accordance with generally accepted good commercial practices and customary standards and practice.  Metro is informed and believes, and on that basis alleges that an environmental assessment consistent with Cal. Health & Safety Code §§ 25319.1 and 25319.5 was performed.

73.    Metro is informed and believes and thereon alleges that Metro purchased the property for public use, in lieu of the exercise of its eminent domain powers.

## THIRD CLAIM FOR RELIEF

(Nuisance)
(Against All Defendants)

74.    Plaintiff refers to and realleges paragraphs 1 through 73 of this Complaint and incorporates them herein by this reference as though set forth in full herein.

75.    By engaging in the conduct described in this complaint Defendants created, or permitted to exist, a condition of the Property that was and is a threat to public health, namely the presence of Hazardous Substances in the soil of the

BDG LAW GROUP
10880 Wilshire Blvd. Suite 1015
Los Angeles, California 90024
Telephone: (310) 470-6110, Facsimile: (310) 474-0931

1 Property.

2      76.    The presence of Hazardous Substances at the Property has interfered with

3 Metro's use and enjoyment of the Property.

4      77.    The contamination caused by Defendants, and each of them, is of the

5 nature that an ordinary person would reasonably be annoyed and disturbed by such

6 conduct and its result, and Metro was annoyed and disturbed by it.

7      78.    Metro did not consent to the actions of Defendants or their predecessors

8 that caused the Release of Hazardous Substances at the Property.

9      79.    The Release of Hazardous Substances at the Property, and Defendants'

10 failure to remedy or repair the contamination of the Property, caused harm to Metro in

11 the manner and the amounts alleged herein.  Defendants' conduct was a substantial

12 factor in causing that harm to Metro.

13      80.    The nuisance to Plaintiff's Property is ongoing and continuing.

14      81.    The harm suffered by Plaintiff as a result of the Defendant's conduct

15 outweighs the social utility, if any, of the conduct of Defendants.

16                      **FOURTH CLAIM FOR RELIEF**

17                              (Trespass)
18                      (As Against All Defendants)

19      82.    Plaintiff refers to and realleges paragraphs 1 through 81 of this Complaint

20 and incorporates them herein by this reference as though set forth in full herein.

21      83.    As a direct and proximate result of the acts or omissions of Defendants,

22 and each of them, Plaintiffs' Property has become physically invaded by the Release

23 of the Hazardous Substances.

24      84.    By engaging in the conduct alleged in this Complaint, Defendants caused

25 the Release of Hazardous Substances onto the Property without the permission of

26 Metro.

27      85.    The Release of these Hazardous Substances onto the Property has caused

28 ongoing harm to Metro as described above.  Defendants conduct, as alleged in

BDG LAW GROUP
10880 Wilshire Blvd. Suite 1015
Los Angeles, California 90024
Telephone: (310) 470-6110, Facsimile: (310) 474-0931

paragraphs 32-34 of this Complaint was a substantial factor in causing that harm to Metro.

## FIFTH CLAIM FOR RELIEF

### (Negligence)
### (As Against All Defendants)

86.    Plaintiff refers to and realleges paragraphs 1 through 85 of this Complaint and incorporates them herein by this reference as though set forth in full herein.

87.    "Everyone is responsible, not only for the result of his or her willful acts but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person." California Civil Code §1714(a). Defendants, while owning, occupying, or conducting manufacturing operations, owed a duty to Plaintiff and to the public to use, store, maintain, monitor, remove, dispose of, and contain Hazardous Substances in a safe and careful manner. Defendants owed a duty to Metro and the public to avoid storing, disposing of, releasing, or allowing to be Released any contaminants and/or Hazardous Substances in a manner that would cause injury to Metro, the Property, the public or the Environment.

88.    Plaintiff alleges that the contamination and resulting property damage and response costs which it incurred, and which it will incur in the future, are due to the negligence of Defendants in their ownership and operations on the Property and that each of the Defendants is guilty of negligence proximately causing the contamination.

89.    Metro is informed and believes and thereon alleges that Defendants breached their duties by negligently, carelessly, and/or recklessly, using, storing, generating, maintaining, monitoring, and removing Hazardous Substances in a way that contaminants were Released into the environment.

90.    Plaintiff is informed and believes and thereon alleges that Defendants failed promptly and diligently to contain and clean up the contamination caused by their Releases of Hazardous Substances.

BDG LAW GROUP
10880 Wilshire Blvd. Suite 1015
Los Angeles, California 90024
Telephone: (310) 470-6110, Facsimile: (310) 474-0931

91.     Plaintiff is informed and believes and thereon alleges that the Releases of the Hazardous Substances would not have occurred absent some form of negligence by Defendants that the Releases of contaminants was caused by a Facility within the exclusive control of the Defendants; and that such Release was not due to any voluntary action or contribution on the part of Plaintiff.

92.     As a direct and proximate result of the acts, omissions, and conduct of Defendants, Plaintiff has suffered and continues to suffer damages as alleged herein. The above-described acts, omissions, and conduct of Defendants, including the negligence and trespass committed by Defendants, and have been without the consent, knowledge, against the will, and in violation of the rights of Plaintiff.

## SIXTH CLAIM FOR RELIEF

(Breach of Written Contract)
(As Against Defendant California Drop Forge, Inc.)

93.     Plaintiff refers to and realleges paragraphs 1 through 92 of this Complaint and incorporates them herein by this reference as though set forth in full herein.

94.     By the terms of the 2017 Lease, Defendant Drop Forge agreed to assume all of the tenant's obligations under the Fansteel Lease.

95.     The 2017 Lease, at Part II ¶ 4.1, provides that the tenant:

*"shall, and shall cause Tenant's employees, agents, customers, visitors, invitees, licensees, contractors, assignees, or subtenants (collectively, "Tenant's Parties"), to operate and maintain the Premises in compliance with all, and shall not cause or permit the Premises to be in violation of any federal, state or local environmental, health and/or safety-related laws, regulations, standards, decisions of the courts, permits or permit conditions, currently existing or as amended or adopted in the future which are or become applicable to Tenant or the Premises ("Environmental Laws")."*

BDG LAW GROUP
10880 Wilshire Blvd. Suite 1015
Los Angeles, California 90024
Telephone: (310) 470-6110, Facsimile: (310) 474-0931

96.    The 2017 Lease, at Part II ¶ 4.1, further provides that:

*"except for Hazardous Materials expressly approved by Landlord in writing . . . Tenant shall not cause, or allow any of Tenant's employees, agents, customers, visitors, invitees, licensees, contractors, assignees, or subtenants (collectively, "Tenant's Parties") to cause or permit any Hazardous Materials to be brought upon, stored, used, generated, treated or disposed of on or about the Premises. Any Hazardous Materials on the site shall be stored, used, generated and disposed of in accordance with all applicable Environmental Laws."*

97.    Part II, Section 4 of the 2017 Lease further provides that

*"in the event of any release or contamination of the Premises-by Tenant or Tenant Parties, Tenant, at its sole expense, shall promptly take all actions necessary to clean up the affected property (including the Premises and all affected adjacent property) and to return the affected property to the condition existing prior to such release or contamination, to the reasonable satisfaction of Landlord and any governmental authorities having jurisdiction thereover."*

98.    Part II Section 4.1 of the 2017 lease further provides that:

*"Tenant shall indemnify, defend (by counsel acceptable to Landlord) and hold harmless Landlord and its partners, officers, commissioners, employees, agents, contractors, successors and assigns (individually and collectively, "lndemnitees"), from and against all loss, liability, claim, damage, costs and expenses (including without limitation, any fines, penalties, judgments, litigation expenses, attorneys' fees, and consulting, engineering, and construction fees and*

**BDG LAW GROUP**
10880 Wilshire Blvd. Suite 1015
Los Angeles, California 90024
Telephone: (310) 470-6110, Facsimile: (310) 474-0931

*expenses) incurred by lndemnitees to the extent a result of (a)*
*Tenant's breach of any prohibition or provision of this section*
*or (b) any release of Hazardous Materials upon or from the*
*Premises or contamination of the Premises or adjacent*
*property, including without limitation any release or*
*contamination occurring during the term of this Lease and the*
*Existing Lease[1]; which (i) occurs due to the use and occupancy*
*of the Premises by Tenant or Tenant's Parties, or (ii) is made*
*worse due to the act or failure to act of Tenant or Tenant's*
*Parties."*

99.     Part II Section 4.1 of the 2017 Lease further provides that:

*"the foregoing indemnity shall be effective regardless of any*
*negligence (whether active, passive, derivative, joint,*
*concurring or comparative) on the part of lndemnitees, unless*
*caused solely by the gross negligence or willful misconduct of*
*lndemnitees, shall survive termination of this Lease; and is in*
*addition to any other rights or remedies which Indemnitees may*
*have under the law or under this Lease."*

100.    In contradiction of, and in breach of, the terms of the written 2017 Lease, California Drop Forge, Inc. has permitted the Release of Hazardous Materials onto the Property, which have caused and exacerbated contamination on the Property throughout the term of the lease and continuing until the termination of the lease in 2021.

101.    Metro has demanded that Defendant perform its obligations under the 2017 lease by remediating the Environmental Contamination and reimbursing Metro for its costs incurred in addressing the contamination; however, Defendant has refused

---

[1] References to the "Existing Lease" within the document refer to the Fansteel Lease.

**BDG LAW GROUP**
10880 Wilshire Blvd. Suite 1015
Los Angeles, California 90024
Telephone: (310) 470-6110, Facsimile: (310) 474-0931

1  to so perform.

2  102.  Metro has fully performed all covenants and obligations imposed upon it

3  by the terms of the 2017 Lease.

4  103.  Drop Forge has breached the Lease by causing or contributing to the

5  Release of Hazardous Materials, by its ongoing failure to remediate the Hazardous

6  Materials and return the Property to an uncontaminated condition, and by refusal to

7  indemnify and defend Metro for costs incurred in investigation and remediating the

8  Environmental contamination at the Site.

9  104.   As a result of the breach of the 2017 Lease, Plaintiff has been damaged,

10  has incurred costs, and will continue to incur costs, including without limitation, the

11  cost of remedy and remediation of the contamination at the Site.

12  105.  Metro has incurred attorney's fees in amount to be proven at trial, which

13  Metro may recover from Drop Forge pursuant to Part II, Sections 19.9 of the 2017

14  Lease.

15  **SEVENTH CLAIM FOR RELIEF**

16  (Declaratory Relief Regarding Response Costs)

    (As Against All Defendants)

17

18  106.  Plaintiff refers to and realleges paragraphs 1 through 105 of this

19  Complaint and incorporates them herein by this reference as though set forth in full

20  herein.

21  107.  A further actual controversy exists between Plaintiff and Defendants

22  concerning their respective rights, obligations and duties in that Plaintiff contends that

23  Defendants are legally responsible for the relief sought herein, and that each

24  Defendant is liable to Plaintiff in direct proportion to its share of liability, although

25  Defendants each dispute this contention and each denies any liability to Plaintiff.

26  108.  Unless the rights, duties, and obligations of Plaintiff and Defendants

27  related to the Release(s) of Hazardous Substances alleged herein, whether arising out

28

**BDG LAW GROUP**
10880 Wilshire Blvd. Suite 1015
Los Angeles, California 90024
Telephone: (310) 470-6110, Facsimile: (310) 474-0931

of federal, state, or common law, are determined in this action, a multiplicity of actions may result.

109.   Metro is entitled to and hereby seeks a declaratory judgment of Defendants' liability to Metro for costs incurred and to be incurred by Metro in responding to the Releases and threatened Release of Hazardous Substances and adverse environmental consequences at issue herein, pursuant to 28 U.S.C. § 2201. and California Health and Safety Code § 25363; and/or other applicable law establishing the liability of Defendants for such past, present and future damages, fees and costs for the purpose of this action. A judicial declaration is necessary and appropriate under the present circumstances in order that Metro may ascertain its rights and duties.

## EIGHTH CLAIM FOR RELIEF
### (Declaratory Relief as to Contractual Obligations)
### (As Against Defendant Drop Forge)

110.   Plaintiff refers to and realleges paragraphs 1 through 109 of this Complaint and incorporates them herein by this reference as though set forth in full herein.

111.   An actual controversy exists between Plaintiff and Defendant Drop Forge in that Plaintiff contends that Drop Forge is contractually obligated to indemnify Plaintiff for any obligations or sums for which Plaintiff may be required to pay and/or may be found liable or indebted to any person, entity, or governmental agency, for alleged response costs and any other costs or damages heretofore or hereafter sought by any person, entity, or governmental agency, in responding to the Releases or threatened Releases of Hazardous Substances as a result of Drop Forge's individual acts, conduct, and/or omissions complained of herein. Plaintiff is informed and believes and thereon alleges that Drop Forge denies any such obligation.

112.   Unless the rights, duties, and obligations of Plaintiff and Defendants related to indemnity and defense obligations are determined in this action, a multiplicity of actions may result.

BDG LAW GROUP
10880 Wilshire Blvd. Suite 1015
Los Angeles, California 90024
Telephone: (310) 470-6110, Facsimile: (310) 474-0931

113.   Plaintiff is entitled to, and hereby seeks, pursuant to California Code of Civil Procedure § 1060, a judicial determination of Plaintiff's right to indemnification and contribution from Defendants for costs or damages that have been, or will be, incurred by Plaintiff in its response to the Releases or threatened Releases of Hazardous Substances at and in the vicinity of the Site.

## PRAYER FOR RELIEF

A.   For recovery from Defendant of all Response Costs that have been or will be incurred by Plaintiff in response to the Release and threatened Release of Hazardous Substances onto and from the property and in the enforcement of CERCLA's statutory liability scheme, as against all Defendants, according to proof at trial.

B.   For recovery from Defendant of all response, remediation or abatement costs incurred with respect to the Release or threatened Release of Hazardous Materials at or from the Site, in an amount in accordance with the degree and percentage of fault attributable to each such Defendant pursuant to California Health and Safety Code § 25363(e), as against all Defendants, in an amount the Court deems appropriate.

C.   For damages to Plaintiff's enjoyment of its interests in the property, as against all Defendants, in an amount to be determined according to proof at trial.

D.   For stigma damages to the value of Plaintiff's property, as against all Defendants, in an amount to be determined according to proof at trial.

E.   For indemnity and defense as against Defendant Drop Forge, pursuant to the Lease Agreement.

F.   For prejudgment interest pursuant to CERCLA § 107(a), 42 (USC §§ 9607(a) and as allowable by California law.

G.   For attorney's fees as against Defendant Drop Forge under the 2017 Lease.

BDG LAW GROUP
10880 Wilshire Blvd. Suite 1015
Los Angeles, California 90024
Telephone: (310) 470-6110, Facsimile: (310) 474-0931

H.     For a declaration under California Code of Civil Procedure § 1060 and 28 U.S.C. § 2201 that Defendants are liable for all costs incurred or to be incurred in the future by Plaintiffs in responding to the Release or threatened Release of Hazardous Materials at or from the Site.

I.     For a declaration that Drop Forge is required to indemnify Plaintiff Metro, under the terms of the 2017 Lease, for all costs, damages, and other relief which may be awarded to any party from Plaintiff in this action with respect to the Hazardous Substances and environmental contamination at the Site caused by Drop Forge.

J.     For all costs of suit incurred herein.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues triable to a jury.

DATED: March 7, 2023          BDG LAW GROUP


By: _____
        Brian J. Bergman
        Lisa DeLorme
Attorneys for Plaintiff, LOS ANGELES COUNTY
METROPOLITAN TRANSPORTATION
AUTHORITY

BDG LAW GROUP
10880 Wilshire Blvd. Suite 1015
Los Angeles, California 90024
Telephone: (310) 470-6110, Facsimile: (310) 474-0931